## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20CR392 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | **MOTION TO AMEND BOND** |
| CHARLES VACCARO, | ) | **CONDITIONS** |
| | ) | |
| Defendant. | ) | |

Defendant Charles Vaccaro hereby moves this Court for an order modifying his conditions of release. Specifically, Mr. Vaccaro's liquid assets are relatively modest and, without an order from this Court reducing his bond and permitting him to liquidate his Azimut yacht, he will be unable to pay his counsel—counsel that have already been by his side for over a year—in violation of his Sixth Amendment rights. The importance of Mr. Vaccaro's Sixth Amendment right to the counsel of his choice is particularly pronounced in this case, not only because of the length of his established relationship with current counsel, but also because Mr. Vacarro is charged with highly complex financial crimes that can only be adequately defended by experienced, sophisticated counsel like those he has already chosen and confided in.

Moreover, given that the assets freed up by a reduction in Mr. Vaccaro's bond will be used exclusively for legal fees, such reduction will not result in a net increase in unencumbered assets available to Mr. Vaccaro and thus will have no negative impact on the statutory purposes of requiring bond. *See* 18 U.S.C. § 3142(c). In fact, failure to reduce bond in order allow Mr. Vaccaro to continue his engagement of his counsel of choice would itself run afoul of the statutory scheme and then some: Such a failure would effectively result in the imposition of bond conditions

exceeding the "least restrictive" conditions required by statute. 18 U.S.C. § 3142(c)(1)(B). Further, all of the factors found in 18 U.S.C. § 3142(g) weigh heavily in favor of a reduced bond. And the Eighth Amendment, precedent, and 18 U.S.C. § 3142(c)(2) demand it as well. For these reasons and as explained more fully below, Mr. Vaccaro's bond should be reduced to an unsecured bond of $50,000 to $100,000, which is in line with similar defendants, under similar circumstances, in this District.

**BACKGROUND**

Over a year ago—on July 22, 2019—Mr. Vaccaro was arrested in the Eastern District of New York pursuant to a Criminal Complaint alleging securities fraud, wire fraud, and conspiracy. *See* ECF No. 1. Following his arrest, Mr. Vaccaro surrendered his passport and was released pursuant to a $1,000,000 appearance bond.[1] *See* ECF No. 4-3, Order Setting Conditions of Release and Bond. That bond was, and is, secured by liens upon Mr. Vaccaro's tangible, illiquid personal property: (1) a 2018 Rolls Royce purchased for approximately $378,000; and (2) an Azimut yacht worth approximately $800,000–$900,000.[2] *See* Exhibit A, Assignment of Liens. Mr. Vaccaro's longtime girlfriend also provided additional security agreeing to serve as a surety for the full bond amount. *See* ECF No. 4-3.

Mr. Vaccaro's initial appearance in this District occurred before Magistrate Judge Parker on August 2, 2019. Magistrate Judge Parker adopted bond conditions identical to those set in the Eastern District of New York, including the $1,000,000 secured appearance bond. After numerous continuances and delays, the grand jury indicted Mr. Vaccaro on July 23, 2020—over a year after

---

[1] Mr. Vaccaro was also restricted to travel between the states of New York, Florida, and Ohio. *See* ECF No. 4-3, Order Setting Conditions of Release and Bond.

[2] The stated value of the yacht was at the time of its posting for bond purposes, and, of course, estimated under perfect sale conditions.

Mr. Vaccaro's initial arrest. *See* ECF No. 21, Indictment. The Indictment alleges a series of complex financial transactions and related conduct which, the government dubiously charges, somehow amount to the commission of securities fraud and related offenses. *Id.* Mr. Vaccaro denies any wrongdoing and has pled not guilty.

The Indictment also alleges that four automobiles owned by Mr. Vaccaro are subject to forfeiture: (1) a 2016 Range Rover; (2) a 2018 Rolls Royce;[3] (3) a 2019 Porsche 911; and (4) a 2018 Tesla Model S 100D. *See* ECF No. 21, ¶ 84. The government has obtained seizure warrants for all four vehicles, which together are valued at approximately $584,675. As of today, Mr. Vaccaro's remaining assets include: (1) approximately $200,000 in cash; (2) an Azimut yacht now worth about $600,000[4] (and currently encumbered by the bond lien); (3) a half-interest in a Magnum yacht (currently disassembled for renovation and thus unsalable) worth about $100,000; and (4) two additional automobiles worth about $55,000 combined. Mr. Vaccaro does not own a home or any other real property.[5]

Mr. Vaccaro's liquid assets are thus limited to approximately $200,000, and his most valuable illiquid asset—the Azimut yacht—is encumbered by the bond lien and is thus unmarketable. Two hundred thousand dollars in cash is by no means an insignificant sum, but

---

[3] That is, the same Rolls Royce placed as collateral pursuant to Defendant's $1,000,000 appearance bond.

[4] This is the estimated sales price of the yacht now, assuming what will likely be hastened sales conditions—essentially, a "fire sale."

[5] In addition to these assets, Mr. Vaccaro holds interest in four business entities, and two individuals owe substantial monetary debts to him. But these "assets," such as they are, are illiquid and not presently monetizable. Nor will they likely ever be. The government contends these businesses were involved in the schemes alleged in the indictment. Mr. Vaccaro does not expect that the businesses will generate any income or that the debtors will actually make good on their debts.

given the complexity and scope of the charges against Mr. Vaccaro, those funds will almost surely be woefully insufficient to cover the cost of mounting a robust defense. And this is to say nothing of the fact that Mr. Vaccaro must cover his living and other everyday expenses with these funds as well.

In the nearly 13 months that have passed since Mr. Vaccaro's initial arrest and release on bond, he has complied with all of the conditions of pre-trial release placed upon him without incident. He is an American citizen and lifelong resident of the United States. His children live in the States as well, and he has surrendered his passport as required.

Going forward, Mr. Vaccaro strongly desires to keep his current legal counsel—the same firms that have represented him since the inception of this case. But this will entail a major expense, one which his current cash reserves are unable to cover. Accordingly, he asks this Court to reduce his bond to a $50,000 - $100,000 unsecured bond, thereby allowing him to liquidate his Azimut yacht and use the funds from that sale to bankroll his continued defense.

**LAW AND ARGUMENT**

In determining what conditions of release to place on a defendant pre-trial, courts are charged with imposing—in addition to mandatory requirements not to commit any crime pre-trial and to submit to DNA testing—"the **least restrictive** further condition, or combination of conditions, . . . that . . . will reasonably" do two things: (1) "assure the appearance of the [defendant] as required, and "assure . . . the safety of any other person and the community." 18 U.S.C. §3142(c)(1)(B) (emphasis added); *see United States v. Tirado*, 912 F.Supp. 273, 277 (N.D. Ohio 1995); *United States v. Melville*, 306 F. Supp. 124 (S.D.N.Y. 1969) ("The task in setting conditions of release consists exclusively of ascertaining the least onerous conditions 'which will reasonably assure the appearance of the person for trial.'").

In performing this analysis, the Court must "take into account the available information concerning" four factors: (1) "the nature and circumstances of the offense charged, including whether it is a crime of violence, a . . . crime of terrorism, or involved a minor victim or a controlled substance, firearm, [or] explosive"; (2) "the weight of the evidence against the [defendant]"; (3) "the history and characteristics of the [defendant]" (e.g., his or her character, mental and physical condition, family and community ties, financial resources, criminal history, and substance-abuse history); and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] potential release." 18 U.S.C. § 3142(g). But, again, these factors are useful only insofar as they bear upon § 3142(c)(1)(B)'s goal: Implementing the "least restrictive" conditions of release, *id.*, that "will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," *United States v. Buchanan*, 2020 WL 3577340 (N.D. Ohio July 1, 2020).

Here, all of these factors weigh strongly in favor of the conclusion that Mr. Vaccaro does not pose a significant flight risk and is not a danger to any person or the community. Accordingly, a modest bond, at most, is appropriate. First, the charges against Mr. Vaccaro center on novel, complex securities-related allegations. In contrast to the categories of crimes listed in the first § 3142(g) factor—violent crimes, or those involving minors, drugs, firearms, or explosives—the offenses alleged against Mr. Vaccaro are decidedly *not* of the type that would indicate a danger to the community should he be released on bond. Indeed, he *has* been free on bond for over a year now without incident. Moreover, even within the realm of securities-related offenses, Mr.

5

Vaccaro's alleged wrongdoing is far more innocuous than that of most defendants[6]—yet another reason why the first factor weighs heavily in favor of, at most, a modest bond.

The second factor—"the weight of the evidence against the [defendant]," 18 U.S.C. § 3142(g)(2)—"goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt," *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010); *see United States v. Richardson*, No. 11-CR-220, 2011 U.S. Dist. LEXIS 122928, at *18 (S.D. Ohio Oct. 21, 2011) ("This factor goes to the weight of the evidence of an accused's dangerousness or flight risk, not to the weight of the evidence pointing to a his or her guilt."). Simply put, there is no evidence that Mr. Vaccaro poses a danger to any individual or to the community. And, certainly, an alteration in the amount of bond he is required to post does nothing to affect this factor one way or another.

Next, Mr. Vaccaro's "history and characteristics" likewise indicate a need for little or no bond here. Mr. Vaccaro has no serious criminal history and has lived in the United States his entire life. He has a long-time girlfriend and two college-aged children who all reside in New York. His physical condition has declined immensely in the past few years, and he has a history of cardiac problems, including multiple arterial stents related to serious heart complications. Further, Mr. Vaccaro has proved he can abide by his bond conditions, as he has done for the past year. Finally, regarding the fourth factor, as all of the above shows, Mr. Vaccaro is clearly not a danger to society or to any individual, nor would a reduction in the amount of his bond alter this reality in any way.

---

[6] Indeed, while the 55-page indictment is not short on detail—it alleges, for example, 155 subparagraphs of "overt acts" to accompany the charge of conspiracy to commit securities fraud—it is woefully short on substance. That is, while it is filled with paragraph after paragraph of insinuating verbiage and opaque excerpts of sundry communications, the actual fraud purportedly alleged is nearly inscrutable. After reviewing the Indictment, the reader is left with the distinct suspicion that there is no "there" there.

Therefore, the "nature and seriousness of the danger" he poses while on bond, 18 U.S.C. § 3142(g)(4), is nonexistent.

In short, all of the statutory factors weigh resolutely in favor of the conclusion that Mr. Vaccaro poses no danger and no flight risk. Thus, nothing more than release on personal recognizance or unsecured appearance bond is necessary here, and requiring anything more arguably violates § 3142(b) ("judicial officer *shall* order pretrial release of the [defendant] on personal recognizance[] or upon execution of an unsecured appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the [defendant] . . . or will endanger the safety of any other person or the community" (emphasis added)) and § 3142(c)(2) (requiring courts to impose "the least restrictive" additional release condition(s) reasonably possible). But even if this Court concludes that some sort of bond remains appropriate here, still it is beyond reasonable dispute that the present $1,000,000 bond is—given the factors above and, particularly, Mr. Vaccaro's current need to use some of the assets in question to fund his defense—excessive and thus violate of the § 3142(c)(1)(B)'s "least restrictive" conditions requirement.[7]

In this regard, it is important to recall that "the purpose of bail is to secure the presence of the defendant, its object is not to enrich the government or punish the defendant." *United States v. Powell*, 639 F.2d 224, 225 (5th Cir. 1981) (internal citations omitted). Yet failure to reduce the

---

[7] The $1,000,000 bond was arguably excessive from the start, but given the dearth of evidence, Mr. Vaccaro's—and his counsel's—keen hope and expectation at the time that bond was imposed were that the government would ultimately decline to prosecute and that the bond issue would be mooted in short order. But, of course, the government ultimately opted for a different path. In the meantime, over a year has passed, Mr. Vaccaro has been unable to generate income during that time and has instead been living off of his savings, and it has become abundantly clear that Mr. Vaccaro must now ready more extensive financial resources to robustly defend himself in a case that the government has shown a desire to pursue come hell or high water.

amount of Mr. Vaccaro's bond here will bar him from freeing up assets for use in paying for his defense and thus would indeed be punitive. Without a reduction of his bond and the concomitant release of the lien on his Azimut yacht, Mr. Vaccaro will be faced with an intolerable—and statutorily and constitutionally impermissible—choice between his freedom and his defense, and the Court will be faced with the unpalatable choice of running afoul of § 3142(c)(2)'s command that a "judicial officer may not impose a financial condition that results in the pretrial detention of the person,"[8] on one hand, and running afoul of Mr. Vaccaro's Sixth Amendment right to the counsel of his choice, on the other.

Indeed, restraint of a defendant's "legitimate assets" can present a severe, often unconstitutional strain on "the Sixth Amendment right to counsel of choice." *United States v. Bissell*, 866 F.2d 1343, 1354 (11th Cir. 1989). And "[a]lthough the right [to counsel of choice] is not absolute, it nevertheless protects the use of legitimate assets to retain a lawyer and to pay for the often complex and expensive pretrial preparations required in" complicated white-collar cases. *Id.* (citation omitted). In other words, "[a] wrongful deprivation of legitimate assets will severely impair the defense." *Id.* Moreover, a defendant's right to utilize such assets to pay for the counsel of his choice is only augmented where, as here, the counsel he wishes to maintain have already been by his side for over a year and possess detailed knowledge of both the facts of his case and the arcane securities laws that underly the charges. *See, e.g.*, *United States v. Kaley*, 579 F.3d 1246, 1258 (11th Cir. 2009) ("Losing access to long-time counsel who have already invested substantial

---

[8] With regard to this requirement, *see, e.g.*, *United States v. Tirado*, 912 F.Supp.273, 277-278 (N.D. Ohio 1995) ("If a District Court enters an order for pretrial release containing a financial condition that the defendant in good faith cannot fulfill, when the defendant makes known to the court that the stipulated condition is unattainable, then the court must explain its reason for determining that the particular requirement is an indispensable component." (citing *United States v. Mantecon-Zayas*, 949 F.2d 548 (1st Cir. 1991))).

time into learning the intricacies of the [defendants'] case and preparing for trial will unquestionably cause the [defendants] prejudice."). Similarly, "[w]here the defendant presents a bona fide need to utilize assets subject to [a] restraining order to conduct his defense [and] the district court finds that the defendant does not have other assets from which such payments can be made, . . . [and] the government elects not to disclose sufficient information to justify its retention of all of the assets . . . , then the court must order the release of funds in an amount necessary to pay reasonable attorneys' fees for counsel of sufficient skill and experience to handle the particular case." *United States v. Moya-Gomez*, 860 F.2d 706, 730 (7th Cir. 1988).[9]

In this District, it is commonplace for white-collar defendants, even out-of-district defendants or defendants who commit serious obstructive conduct, to be released on unsecured bond amounts substantially lower than the secured amount here, usually within the $25,000 to $50,000 amount. *See United States v. Physicians Surgical Group, LLC, et al.*, No. 1:14CR447 (N.D. Ohio 2014) (Adams, J.) (multi-million dollar healthcare fraud case whereby out-of-state defendants were released on unsecured bonds ranging from $20,000 to $100,000); *United States v. Suarez, et. Al.*, No. 5:13CR420 (N.D. Ohio 20130) (Gaughan, J.) (campaign finance violations case whereby defendant was alleged to have obstructed FBI investigation, withheld documents from grand jury subpoena, and tampered with witnesses; defendant was released on $50,000 unsecured bond); *United States v. Rodak, et al.*, No. 1:15CR00365 (N.D. Ohio 2015) (Boyko, J.)

---

[9] Note that *Bissell*, *Kaley*, and *Moya-Gomez*—all clearly stating that restraint of legitimate assets necessary for defense is unconstitutional—were decided in the forfeiture context, *i.e.*, in situations in which the government had alleged that the assets in fact were *not* legitimate. Even in such circumstances, the courts in these cases were highly skeptical of attempts to freeze assets necessary for funding the defendants' counsel of choice. *A fortiori*, then, courts must be even more diligent in situations where, as here, no forfeiture allegations are present with respect to the property in question—namely, the Azimut yacht—and there is no indication that it was procured via illicit activity.

(investment fraud case whereby defendant with heavy foreign ties was released on $25,000 unsecured bond); *United States v. Snyder*, No. 1:17CR507 (N.D. Ohio 2017) (Pearson, J.) (embezzlement and tax fraud case whereby defendant was released on $50,000 unsecured bond); *United States v. Halil, et al.*, No. 5:12CR00303 (N.D. Ohio 2012) (Polster, J.) (ATM skimmer fraud case involving foreign defendant who was released on $20,000 unsecured bond).

      Mr. Vaccaro has surrendered his passport and is not a flight risk; he has no ties with any foreign country and has no foreign language skills; he has significant family ties to the United States, where his children and longtime girlfriend reside; and he is not associated with multiple personal identifiers. Moreover, he has been on pre-trial release for over a year already without a shred of evidence that he has ever violated any of the terms of his current conditions of release. And, most importantly, without a significant reduction in bond and release of the encumbrance of his Azimut yacht, Mr. Vaccaro will be on able to keep the counsel of his choice.[10] In short, every statutory factor, the statute's "least restrictive" command, precedent, and Sixth and Eighth Amendments considerations all unanimously counsel—indeed, require—reduction of Mr. Vaccaro's bond here.

## CONCLUSION

      For all of these reasons, Defendant Charles Vaccaro respectfully asks this Court to issue an order substantially reducing his bond to an unsecured bond of $50,000 to $100,000 and permitting the release of his Azimut yacht from any and all encumbrances.

---

[10] The stark contrast between bond requirements of typical white collar defendants in this District and that levied against Mr. Vaccaro, in addition to the facts discussed above, supplies yet another reason why Mr. Vaccaro's bond must be reduced: The current, disproportionate bond imposed against him violates the Eighth Amendment and its prohibition on excessive bail. *See, e.g.*, *United States v. Beaman*, 631 F.2d 85, 86 (6th Cir. 1980) (holding the Eighth Amendment prohibits excessive bail and that a $400,000 bond was excessive).

Respectfully submitted,

/s/ *Paul M. Flannery*
Paul M. Flannery (OH: 0091480)
Christos N. Georgalis (OH: 0079433)
**Flannery | Georgalis, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
Telephone: (216) 367-2094 (Paul)
Telephone: (216) 367-2095 (Chris)
paul@flannerygeorgalis.com
chris@flannerygeorgalis.com

/s/ *Alex B. Spiro*
Alex B. Spiro (NY: 4656542)
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7364
alexspiro@quinnemanuel.com

*Attorneys for Defendant Charles Vaccaro*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Paul M. Flannery*
Paul M. Flannery

*Attorney for Defendant Charles Vaccaro*